IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

ALLIANCE COAL, LLC,
**Employer Below, Petitioner**

**v.) No. 26-ICA-49**          (JCN: 2017019740)

**JOSEPH J. BETTINAZZI,**
**Claimant Below, Respondent**

**FILED**
**August 6, 2026**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner Alliance Coal, LLC, ("Alliance") appeals the February 2, 2026, order of the Workers' Compensation Board of Review ("Board"). Respondent Joseph J. Bettinazzi filed a response.[1] Alliance did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order finding the claimant to be fully compensated by a prior 10% permanent partial disability ("PPD") award for occupational pneumoconiosis ("OP"), and, instead, granting the claimant an additional 5% PPD award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

The Occupational Pneumoconiosis Board ("OP Board") examined Mr. Bettinazzi on September 7, 2017. The OP Board noted that Mr. Bettinazzi had a thirty-six-year history of exposure to dust as an underground coal miner/roof bolter/section foreman. The OP Board reviewed Mr. Bettinazzi's medical records. Mr. Bettinazzi reported shortness of breath for eight to nine years, chronic cough for ten years productive of green/yellow sputum, and wheezing for eight to nine years. The OP Board noted that Mr. Bettinazzi was in good clinical condition and not in any respiratory distress at rest. The OP Board indicated that the chest x-rays showed insufficient evidence of pleural or parenchymal changes to establish a diagnosis of OP.

---

[1] Alliance is represented by James W. Heslep, Esq. Mr. Bettinazzi is represented by M. Jane Glauser, Esq.

1

On September 21, 2018, the Board issued a decision finding that Mr. Bettinazzi is entitled to the benefit of the presumption set forth in West Virginia Code § 23-4-8c(b) (2009).[2] On April 8, 2019, Jeffrey S. Unger, M.D., completed a chest radiograph interpretation form based on Mr. Bettinazzi's March 19, 2019, chest x-ray. Dr. Unger described the film quality as one, and he found no parenchymal or pleural abnormalities consistent with pneumoconiosis. In November of 2019, the OP Board evaluated Mr. Bettinazzi and found sufficient evidence to justify a diagnosis of OP with 10% pulmonary function impairment attributable to OP. On December 16, 2019, Mr. Bettinazzi was granted a PPD award of 10% for impairment related to OP based on the OP Board's findings.

Robert J. Tallaksen, M.D., completed a chest radiograph interpretation form based on Mr. Bettinazzi's November 4, 2021, chest x-ray. Dr. Tallaksen described the film quality as one and found no parenchymal or pleural abnormalities consistent with pneumoconiosis. Mr. Bettinazzi underwent a chest CT on June 26, 2023, revealing a seven millimeter, left lower lobe, pulmonary nodule. A CT of the chest dated December 27, 2023, was compared to the CT dated June 26, 2023. The impression was bilateral nodular densities including a new nodular infiltrate at the right posterior lung base.

On March 7, 2024, Shawn Posin, M.D., saw Mr. Bettinazzi at the Reynolds Memorial Hospital Respiratory and Occupational Lung Disease Clinic for an evaluation. From the arterial blood gas ("ABG") studies, Dr. Posin concluded that there were no significant abnormalities. He noted that spirometry showed an FEV1 of 73, which he said is consistent with 10% pulmonary impairment, and an FEV1/FVC of 60%, which is consistent with 30% pulmonary impairment. Dr. Posin opined that Mr. Bettinazzi has a 25% permanent pulmonary impairment due to occupational exposure. Dr. Tallaksen completed a chest radiograph classification form for Mr. Bettinazzi's March 7, 2024, chest x-ray. Dr. Tallaksen described the film quality as two and found no parenchymal or pleural abnormalities consistent with pneumoconiosis.

---

[2] W. Va. Code § 23-4-8c(b) provides:

If it can be shown that the claimant or deceased employee has been exposed to the hazard of inhaling minute particles of dust in the course of and resulting from his or her employment for a period of ten years during the fifteen years immediately preceding the date of his or her last exposure to such hazard and that the claimant or deceased employee has sustained a chronic respiratory disability, it shall be presumed that the claimant is suffering or the deceased employee was suffering at the time of his or her death from occupational pneumoconiosis which arose out of and in the course of his or her employment. This presumption is not conclusive.

Mr. Bettinazzi underwent a CT of the chest on March 25, 2024. The radiologist compared this CT to the one from December 27, 2023, and his/her impression was stable left upper and periprocedural nodules. A previously seen right lower lobe nodule was reported to be resolved. On March 25, 2024, Mr. Bettinazzi submitted a request to reopen the claim for permanent partial disability benefits. The claim administrator issued an order dated April 3, 2024, granting a reopening of the claim for PPD benefits.

The OP Board examined Mr. Bettinazzi on June 6, 2024, and noted that he had a thirty-six-year history of exposure to dust as an underground coal miner/section foreman/roof bolter. The OP Board reviewed Mr. Bettinazzi's prior diagnostic examinations and pulmonary function studies. The OP Board noted that Mr. Bettinazzi was diagnosed with hypertension in 2004, and that he uses bronchodilator medication. The OP Board found that Mr. Bettinazzi was in good general clinical condition and not in any respiratory distress at rest. The OP Board further noted harsh breath sounds bilaterally, but no rales or wheezing. Chest x-rays compared to previous OP Board films from November of 2019 and September of 2017, showed insufficient pleural or parenchymal changes to establish a diagnosis of OP. The OP Board found sufficient evidence to justify a diagnosis of OP with no more than 10% pulmonary functional impairment attributable to OP as previously found.

On July 29, 2024, the claim administrator issued an order finding that Mr. Bettinazzi had been fully compensated by a prior 10% PPD award for OP and closed the claim for PPD benefits. Mr. Bettinazzi protested this order. Mr. Bettinazzi underwent a CT scan of his chest on March 27, 2025, which was compared to his prior CT scans and x-rays. The impression was stable bilateral pulmonary nodules.

The OP Board testified at a hearing on December 10, 2025. John A. Willis, M.D., the OP Board's radiologist, testified that he reviewed three chest CTs dated March 25, 2024, December 27, 2023, and June 26, 2023, and that all were of good quality but did not demonstrate parenchymal or pleural changes sufficient to make a diagnosis of OP. He opined that the CTs showed a small calcification that could be a calcified pleural plaque, related to occupational exposure, which he noted would be asbestos exposure. Jack L. Kinder, M.D., indicated that Mr. Bettinazzi has 30% impairment based on pulmonary function studies. After reviewing the CT scans, Dr. Kinder believed the impairment attributed to OP should be increased from 10% to 15% based upon the identification of a potential pleural plaque by CT scan and because Mr. Bettinazzi was exposed to asbestos. Dr. Kinder explained that this opinion was not inconsistent with Dr. Willis' testimony. Dr. Kinder stated that although a pleural plaque is not a parenchymal pneumoconiosis and not a pneumoconiosis in itself, it is a marker of exposure and usually significant exposure. Dr. Kinder noted that the best pulmonary study showed 30% overall impairment. Further, Dr. Kinder testified that because the pleural plaque is a marker of significant dust exposure, it

3

made him more inclined to increase the award from 10% to 15% impairment. Mallinath Kayi, M.D., testified that he agreed with Drs. Willis and Kinder.

On February 2, 2026, the Board reversed the claim administrator's order, which found that Mr. Bettinazzi had been fully compensated by a prior 10% PPD award for OP, and instead granted him an additional 5% PPD for a total award of 15%. The Board found that the OP Board was not clearly wrong in finding that Mr. Bettinazzi had 15% impairment related to OP. Alliance now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Alliance argues that testimony from Dr. Kinder directly conflicts with testimony from Dr. Willis. Further, Alliance argues that Dr. Kinder erroneously relied on a repealed version of West Virginia Code § 23-4-6a as the basis for his recommendation of a 5% increased award. [3] We disagree.

Here, the Board found that Mr. Bettinazzi has an additional 5% impairment attributable to OP for a total of 15% permanent partial disability for OP. The Board noted that the OP Board found no radiological evidence of OP; however, the OP Board found

---

[3] West Virginia Code § 23-4-6a was amended in 2003 to eliminate the 5% PPD award based on solely diagnostic studies. Currently, PPD awards in OP cases may only be based on measurable pulmonary impairment.

4

that the impairment attributed to OP should be increased from 10% to 15% impairment based upon the identification of a potential pleural plaque by CT scan, a review of the evidence, and pulmonary function studies. Further, the Board noted that this claim is subject to the non-medical presumption set forth in West Virginia Code § 23-4-8c(b). Ultimately, the Board found that the testimony of the OP Board was supported by credible medical evidence and has not been shown to be clearly wrong.

Upon review, we find no merit in Alliance's arguments. Contrary to Alliance's position, Dr. Kinder did not base his recommendation on the repealed 5% diagnostic award previously found in West Virginia Code § 23-4-6a. In fact, Dr. Kinder noted the 5% diagnostic award was repealed. Dr. Kinder was merely referencing the repealed version of West Virginia Code § 23-4-6a for historical purposes.

Mr. Bettinazzi has a measurable pulmonary impairment of 30%. Dr. Kinder believed that the plural plaque findings indicate that Mr. Bettinazzi's pulmonary impairment from occupational pneumoconiosis is greater than the previously awarded 10% PPD, and that Mr. Bettinazzi should receive an additional 5% PPD. We understand how Dr. Kinder's analogy with the repealed version of West Virginia Code § 23-4-6a could cause confusion, but it is clear that Dr. Kinder was using his medical judgment when apportioning, and not legal parameters from a repealed statute.

Further, we also do not find that Dr. Kinder's testimony contradicts that of Dr. Willis. Again, we note this is a presumptive case. Dr. Willis stated that there is no radiographic evidence of OP, yet he also testified that the CT showed a small calcification along the pleural surface that could be a pleural plaque related to occupational exposure and that it could indicate asbestos-related pleural disease. Dr. Kinder did not contradict Dr. Willis. He explained that there is evidence of significant exposure, which is sufficient for the OP Board to find that 15% of Mr. Bettinazzi's overall 30% impairment is related to his occupational exposure.

We conclude that the Board was not clearly wrong in finding that Mr. Bettinazzi established that he is entitled to an additional 5% PPD award for impairment related to OP. Further, we conclude that the Board is not clearly wrong in finding that Alliance failed to establish that the OP Board was clearly wrong. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order.

Accordingly, we affirm the Board's February 2, 2026, order.

5

Affirmed.

**ISSUED:** August 6, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White